1
2
3
4                     UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   JULIE SU, California State Labor
    Commissioner, Division of Labor Standards        Case No.  12-cv-03743 JST
    Enforcement
8                                                     **ORDER GRANTING IN PART AND**
                          Plaintiff,                  **DENYING IN PART DEFENDANT'S**
9                                                     **MOTION FOR SUMMARY**
              v.                                      **JUDGMENT; DENYING PLAINTIFF'S**
10                                                    **MOTION FOR PARTIAL SUMMARY**
                                                      **JUDGMENT**
    SIEMENS INDUSTRY, INC.,
11
                          Defendant.                  ECF Nos. 83 & 85.
12
13
14  I.    INTRODUCTION
15          In this employer retaliation action arising under Section 6310 of the California Labor
16  Code,[1] Plaintiff and California State Labor Commissioner Julie Su ("Plaintiff") and Defendant
17  Siemens Industry, Inc. ("Defendant") have each filed motions for summary judgment.  The matter
18  came on for hearing April 9, 2014.
19  II.   BACKGROUND
20          A.    The Parties and Claims
21          Plaintiff Julie Su, the California State Labor Commissioner, brings this action on behalf of
22  Charles Anderson and Charles Pitschner ("Complainants") against Defendant Siemens Industry,
23  Inc. ("Defendant").  Anderson and Pitschner were employed by Defendant as part of the crew
24  installing a baggage conveyor system at San Francisco International Airport ("SFO").  Their
25  employment was subsequently terminated after they made job-related safety complaints.   Plaintiff
26  now brings this claim under Section 6310 of the California Labor Code ("Section 6310") for
27
28  _____
    [1] All statutory citations hereinafter refer to the Labor Code except where otherwise stated.

retaliatory termination.

### B.     Factual Background

Defendant is a subcontractor of general contractor Turner Construction, Inc., which was responsible for renovating Terminal 2 at SFO.  Declaration of Jim Smith ("J. Smith Decl.") ¶ 6, ECF No. 85-21.  Defendant employed millwrights from Carpenters' Union Local 102 to install baggage conveyors in terminal 2 from about mid-2009 until at April 15, 2011.  Id.

Defendant hired Complainant Anderson as a foreman in July 2009.  Ex. A, Deposition of Charles R. Anderson ("Anderson Dep.") 49-50, ECF No. 84-1.  In September 2009, Defendant hired Complainant Pitschner, Anderson's son, as a journeyman.  Deposition of Charles Richard Pitschner II (Pitschner Dep.), 27, 58, ECF No. 84-2.  Anderson's duties included managing workers, coordinating with other contractors, buying tools and safety equipment, inspecting equipment, and at times overseeing the entire project.  Anderson Dep. 71; Second Declaration of Charles R. Anderson ("Anderson 2nd Decl.") ¶ 15, ECF No. 87-9.  Pitschner's job duties included installing the conveyor as well as filling out daily forklift inspection sheets.  Pitschner Dep. 58, 257.  Both Anderson and Pitschner believed that they, like all employees on the job site, also had a duty to raise safety concerns.  Anderson Dep. 131, 231; Pitschner Dep. 214.

David Slotta served as Siemens' superintendent on the project. Deposition of David Slotta ("Slotta Dep.") 15, ECF No. 84-2.  His duties included overseeing the job, scheduling, handling logistics, and ordering supplies.  Id.  Kelly Scott, Mr. Slotta's superior and an employee of Siemens, was responsible for managing the project.  Id. at 29-30, 35.  For the most part, Mr. Scott was not on site at the project. Id. at 109-110.

Turner, the general contractor, employed its own personnel on site including site Superintendent Don Peterson and Safety Manager Joel Kellogg.  Id. at 17-18.

#### 1.     The Safety Complaints to Siemens

Throughout their employment with Siemens, Complainants reported numerous safety concerns to Slotta.  Anderson Dep. 216-219; Pitschner Dep. 266, 271-272.  Anderson testified that the great majority of the complaints he made to Slotta were met with approval, and that raising safety concerns was part of Anderson's job.  Anderson Dep. 218-219, 231.  However, Anderson

United States District Court
Northern District of California

asserts that when he objected to Slotta's practice of giving his crew licenses to operate forklifts without providing the requisite training, Slotta disregarded his concerns, at one point telling him to "shut up about it."  Anderson Dep. 152-153, 160.  Pitschner likewise objected to this practice. Pitschner Dep. 171-172, 256, 266.

### 2.  The "Near Misses" and Complaints to Turner

In early February, Anderson was informed of two "near misses" on the job site – incidents in which individuals were put at risk, but not actually injured.  Anderson Dep. 190, 271.  On February 10, two days after the near misses, Anderson was issued a written warning for conduct unrelated to the safety incidents.  Anderson Dep. 271; Carney Decl. Ex. G.

The next day, on February 11, Anderson approached Turner's safety manager, Joe Kellogg, told him that Siemens had issued forklift licenses to its workers without giving them training, and asked whether Slotta had told him about the near misses.  Slotta Dep. 58; Anderson Dep. 159, 161-162.  In response, Anderson claims Kellogg "blew up," saying that he was "tired of all the bullshit" and planned on putting "an end to the drama."  Anderson Dep. 162.  Kellogg, in turn, told Slotta what Anderson had reported to him.  Su Opp. at 2; Slotta Dep. at 58.[2]

On February 16, Slotta called a meeting of all of the millwrights.  Slotta Dep. 126.  At that meeting Slotta informed all of the millwrights that he was removing all discipline that they had previously received, and that they were starting over with a clean slate.  Slotta Dep. 93-94.  During the same meeting Slotta announced that Paul Batsel would be responsible for all paperwork, a task previously assigned to Anderson.  Anderson Decl. ¶ 5.  Slotta also prohibited anyone from entering either Siemens' or Turner's trailer.  Id. ¶ 6.  Prior to this meeting, Anderson had regularly entered the trailer as part of his duties as a senior foreman.  Id.  At the close of the meeting, Slotta told Anderson that he would no longer be attending foremen's meetings.  Id. ¶ 7.

On March 12, 2010, less than a month after the meeting, Siemens laid off four workers,

---

[2] Plaintiff also cites to page 57 of Slotta's declaration, but has not provided the Court with that page.  Although the point does not appear to be in dispute, and is strongly suggested on page 58 of Slotta's deposition, the Court does not locate any first-hand source directly stating that Kellogg told Slotta about Anderson's complaint.

1    including Anderson and Pitschner.  Anderson Decl. ¶ 7.

2        **C.    Procedural History**

3        Following their discharge, the Union filed grievances on behalf of Complainants seeking

4    reinstatement. Anderson Decl., Ex. A, B.  This ultimately led to an arbitration between the Union

5    and Defendant.  J. Smith Decl. ¶ 7-8.

6        After two days of proceedings, the arbitrator, Gerald McKay, rendered a decision.  <u>Id.</u>

7    ¶¶ 8-9.  The decision awarded Complainants one hundred hours of wages and fringe benefits.

8    Decision and Award of the Arbitrator at 4.  The decision also stated that "the decision to lay Mr.

9    Anderson and his son off were done specifically by Mr. Slotta in retaliation for Mr. Anderson's

10   actions taken against him."  <u>Id.</u>

11       On June 12, 2012, Plaintiff, California Labor Commissioner Julie Su, brought this action in

12   San Francisco Superior Court on behalf of Pitschner and Anderson under California Labor Code

13   Section 6310 seeking back wages and injunctive relief.  Su Complaint, ECF No. 1.  Defendant

14   then removed the case to this Court pursuant to 28 U.S.C. § 1332.  Notice of Removal, ECF No. 1.

15   Anderson filed a petition to intervene, and the Court granted that petition.  Order Granting Motion

16   to Intervene, ECF No. 57.

17       Both parties have moved for summary judgment, which motions are now before the Court.

18   Defendant's Motion for Summary Judgment or in the Alternative Partial Summary Judgment

19   ("Def. MSJ"), ECF No. 83; Plaintiff's Motion for Partial Summary Judgment or in the Alternative

20   for an Order Treating Specified Facts as Established ("Su MSJ"), ECF No. 85.

21       **D.    Legal Standard**

22       Summary judgment is proper when a "movant shows that there is no genuine dispute as to

23   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

24   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

25   citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(A).  A

26   party also may show that such materials "do not establish the absence or presence of a genuine

27   dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R.

28   Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable

United States District Court
Northern District of California

1    fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–

2    49 (1986).  A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In

3    considering a motion for summary judgment, the court may not weigh the evidence or make

4    credibility determinations, and is required to draw all inferences in a light most favorable to the

5    non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

6           Where the party moving for summary judgment would bear the burden of proof at trial,

7    that party bears the initial burden of producing evidence that would entitle it to a directed verdict if

8    uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474,

9    480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of

10   proof at trial, that party bears the initial burden of either producing evidence that negates an

11   essential element of the non-moving party's claim, or showing that the non-moving party does not

12   have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If

13   the moving party satisfies its initial burden of production, then the non-moving party must produce

14   admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine

15   Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000).  The non-moving party must

16   "identify with reasonable particularity the evidence that precludes summary judgment."  Keenan v.

17   Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Indeed, it is not the duty of the district court to "to

18   scour the record in search of a genuine issue of triable fact."  Id.  "A mere scintilla of evidence

19   will not be sufficient to defeat a properly supported motion for summary judgment; rather, the

20   nonmoving party must introduce some significant probative evidence tending to support the

21   complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and

22   internal quotation marks omitted).  If the non-moving party fails to make this showing, the moving

23   party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

24          **E.      Jurisdiction**

25          The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

26   **III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

27          Defendant moves for summary judgment on the grounds that Plaintiff cannot show that

28   Complainants engaged in protected activity that resulted in their termination, and therefore she

United States District Court
Northern District of California

5

cannot carry her burden of establishing a *prima facie* case of a Section 6310 violation. Defendant's Motion for Summary Judgment ("Su MSJ"), ECF No. 83 at 13; <u>see</u> <u>Yankowitz</u>, 36 Cal. 4th at 1042.  Moreover, Defendant contends that Plaintiff's damages are limited as a matter of law because (1) Plaintiff cannot recover health and welfare benefits, and (2) Plaintiff cannot recover damages beyond the date of completion of the SFO project. <u>Id.</u> at 18, 19, 22.

Plaintiff opposes Defendant's motion, contending that Anderson and Pitschner's safety complaints qualify as protected activity under Section 6310.  ECF No. 87.  Plaintiff further contends that employer contributions toward health and welfare benefits are properly included in a damage award, and that recovery beyond the project completion date is proper because Siemens' contract also included post-construction operation and maintenance work. <u>Id.</u> at 19, 23.

The Court first addresses Defendant's argument that Plaintiff cannot show that Complainants were terminated for protected activity, and second addresses Defendant's argument that the Court should limit Plaintiff's potential damages.

### A.    Protected Activity under Section 6310

Section 6310 prohibits an employer from terminating or otherwise discriminating against an employee because the employee has made "any oral or written complaint to . . . his or her employer" about unsafe working conditions or unsafe work practices.  Cal. Lab.Code § 6310(a).

Courts considering 6310 claims have applied the three-part burden-shifting framework set forth by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Yankowitz v. L'Oreal USA, Inc.</u>, 36 Cal. 4th 1028, 1042 (2005).  Under that test, an employee must first establish a *prima facie* case for retaliation.  <u>Yankowitz</u>, 36 Cal. 4th at 1042.  Once the employee has established a *prima facie* case, the employer must offer a legitimate, non-retaliatory reason for the adverse employment action to rebut the employee's claim. <u>Id.</u>  If the employer does so, the burden shifts back to the employee to prove retaliatory motive. <u>Id.</u>

To establish a prima facie employment retaliation case the Plaintiff must show that:  (1) the employee engaged in a "protected activity"; (2) the employer subjected the employee to adverse employment action; and (3) a causal link existed between the protected activity and the adverse action.  <u>Yankowitz</u>, 36 Cal. 4th at 1042.

United States District Court
Northern District of California

Plaintiff raises two categories of safety complaints, which she contends resulted in Complainants' termination.  Su MSJ at 2.  The first category is complaints made directly to Defendant Siemens, and the second is complaints made to Turner, the general contractor.  Id.  The Court addresses these allegations in reverse order.

### 1.      Complaints to Turner

In order to state a claim under Section 6310, a Plaintiff must first show that he engaged in a protected activity.  See Id.  Specifically, a plaintiff must show that he was discharged or discriminated against because he "[m]ade any oral or written complaint to . . . his or her employer."  Cal. Labor Code § 6310(a)(1).

Defendant sets forth three reasons why Anderson's complaint to Turner was not a protected activity, and therefore does not establish a *prima facie* case.  First, Defendant contends that Anderson's discussion with Turner was not a "complaint," as that word has been construed by courts interpreting Section 6310.  Def. MSJ at 14.  Second, Defendant argues that Anderson's complaints were made in the course of his employment, and for that reason were not a protected activity under Section 6310.  Def. MSJ at 13-14.  Finally, Defendant contends that the Complainants did not make their Complaints to their employer, as required to state a claim under Section 6310.  Def. MSJ at 15.

Plaintiff argues that (1) Anderson's complaint was protected regardless of the language he used to make the complaint; (2) under California law safety complaints made in the scope of employment are protected, and, 3) Turner is a "controlling employer" and is therefore an employer for the purpose of Section 6310, and further, because Anderson's complaint was conveyed to Siemens, "[i]t can thus be said that Anderson made the complaints to Defendant, though indirectly."

### a.      Wording of the Complaint

Defendant notes that when Anderson was asked in deposition about his safety complaint to Turner, he insisted that he had not complained to Turner, but merely asked whether they knew about the safety issues.  See Anderson dep. 157 ("Q. …[Y]ou testified that you went and reported these near misses; correct?  A. I didn't report; I asked a question"); id. at 160 ("Q. . . . [T]he

7

1    impetus to reporting them was these two near misses; correct? . . . A. . . . I didn't report them; I

2    went and asked a question . . . of whether or not Dave Slotta had reported them."). Defendant

3    argues that no relief can be granted to Complainants because Anderson's comments to Turner

4    were posed as questions, which do not qualify as complaints.

5        In support of its position, Defendant cites Oyarzo v. Toulumne Fire Dist., 955 F. Supp. 2d

6    1038, 1099 (E.D. Cal. 2013).  Def. MSJ 15.  There, the court held that although the employee

7    "reported the safety violation . . . he never made a 'complaint' . . . about those violations" because

8    it was his "responsibility to monitor and address such safety violations . . . and keep [his

9    employer] informed" of them.  Id.  Accordingly, the court found that his reports did not amount to

10   a protected activity.  Id.

11       The Oyarzo court's reasoning does not support the proposition for which Defendant uses it

12   – i.e., that complaints must take a particular form to fall within the purview of Section 6310.

13   Instead, Oyarzo stands for the proposition that when an employee's job is to monitor, address and

14   report safety violations, he cannot predicate his Section 6310 claim on the fulfillment of those

15   duties.  Id.  Defendant offers no further support for its position that a safety complaint must take a

16   particular form to be covered by Section 6310, and the Court finds none.

17                    **b.      Course of Employment**

18       Defendant next argues that because Anderson was acting within the scope of his job duties

19   when he made safety complaints, his complaints cannot form the basis of a Section 6310 claim.

20   Def. MSJ at 13-14.  Defendant cites Lukov v. Schindler Elevator Corp., No. 5:11-cv-00201-EJD,

21   2012 WL 5464622 at *5 (N.D. Cal. Nov. 8, 2012) for this proposition.

22       Lukov's reasoning is inapposite.  In Lukov, the plaintiff's job entailed servicing elevators

23   at different stores in San Jose, "taking trouble calls, performing repairs, communicating with

24   customers, ordering parts, conducting tests and examinations of the equipment, identifying

25   potential safety issues, and certifying that certain standards [we]re met."  Id., 2012 WL 5464622,

26   at *1.  "Part of Plaintiff's job responsibilities included informing [the California Division of

27   Occupational Safety and Health] of his client's compliance with the DOSH preliminary order

28   requirements."  Id. at *4.  The controversy at the center of the case arose when the plaintiff was

United States District Court
Northern District of California

8

1    "called upon to observe and certify the annual fire safety testing of the Nordstrom elevator."  Id.

2    Upon finding the Nordstrom system was unsafe, the plaintiff refused to certify the elevator and

3    reported the problem to the California Division of Occupational Safety and Health.  Id.

4           In Lukov, the court held that the plaintiff did not engage in protected activity where he

5    failed to "allege safety issues concerning *his own* workplace or working conditions."  Id., at *5.

6    The court further observed that "an employee whose job entails assessing compliance with statutes

7    and regulations or reporting to government agencies only engages in protected activity if he or she

8    steps outside of his or her role representing the company by initiating an action or asserting

9    protected rights *against* his or her employer."  Id. (italics in original).

10          Here, unlike in Lukov, it is undisputed that the complaints in question were made *against*

11   Siemens.  Moreover, those complaints undeniably concerned Complainants' workplace.  Finally,

12   unlike Lukov and other cases following its reasoning, Complainants here were not hired

13   specifically to "assess compliance with statutes and regulations."  See id.  While Complainants

14   assert that they believed they had a duty to report safety issues on the worksite, this does not

15   qualify Siemens for the narrow exception carved out in Lukov.  Practically all workers have at

16   least some duty to report workplace safety issues they observe on the job.  But that does not make

17   all workers ineligible to bring a Section 6310 claim.  If the exception covered *any* employee who

18   believed that he was required to report safety hazards on his jobsite, the exception would swallow

19   the rule.

20                          c.      "His or Her Employer"

21          Defendant next observes that the complaint for which Anderson contends he was

22   terminated was made to Turner Construction, and that Turner, the general contractor, "was not

23   Anderson's employer." Def. MSJ at 15.[3]  Accordingly, Defendant argues that Plaintiff's claim

24   fails as a matter of law because Anderson's complaint was not a protected activity under Section

25   6310.  To address this argument, the Court must determine the meaning of the phrase "his or her

26

27   [3] Plaintiff does not claim to have made a complaint to "the division, other governmental agencies"
     or "his or her representative," which are the other avenues through which protected safety
28   complaints can be made. See Cal. Labor Code § 6310.

1   employer," as it is used in Section 6310.[4]

2          The possessive "his or her employer" indicates that Section 6310 is concerned with the

3   employer/employee relationship.  The relevant question is whether a general contractor

4   *Complainants'* employer.  However, as a starting point, the Court looks to the definitions

5   contained within the pertinent statutory code.

6          Section 6310 is within Chapter 1 of Part 1 of Division 5 of the California Labor Code,

7   which deals with occupational safety and health.  In Section 6304 of this Chapter, the Legislature

8   has adopted the definition of "employer" contained in Chapter 2 of Part 1 of Division 4, which

9   deals with workers' compensation and insurance.  The Division 4 definition reads, in pertinent

10  part: "'employer' means…[e]very person…which has any natural person in service."  Cal. Lab.

11  Code § 3300.  Standing alone, this sheds little light on the employer/employee relationship

12  required to state a claim under § 6310.

13         The parties cite no cases deciding whether, under Section 6310, a general contractor can be

14  considered the "employer" of a particular sub-contractor's employee.  However, the Court has

15  located two cases discussing a similar provision, which applies the definition of employer set out

16  in Section 6304 and regulates conduct "between an employee and his or her own employer"  Cal.

17  Lab. Code § 6304.5.  In both cases, the courts interpreted the phrase "his or her own employer" to

18  pertain only to direct employers, and to specifically exclude general contractors. See Spencer v.

19  G.A. MacDonald Constr. Co., 63 Cal App. 3d 836, 860-861 (1976) (holding that a general

20  contractor does not qualify as a plaintiff's employer where the plaintiff is directly employed by a

21  subcontractor) (superseded on other grounds); accord Elsner v. Uveges, 130 Cal. Rptr. 2d 483,

22  492-493 (2003) (superseded on other grounds).  In each case, the employee of a subcontractor

23  brought an action against the general contractor.  Spencer, 63 Cal. App. 3d at 836; Elsner, 130 Cal.

24  Rptr. 2d at 483.  Both courts held that after Section 6304's amendment in 1971, the statute was

25

26  _____

27  [4] The Court has consulted the Legislative Counsel's notes on the passage of Section 6310 and
    subsequent amendments, and finds no definition of "his or her employer." Stats. 1973, c. 993, p.
28  1930, § 59, eff. Oct. 1, 1973; Amended by Stats. 1974, c. 1284 p. 2782, § 9; Stats. 1977, c. 460, p.
    1515, § 1; Stats. 1989, c. 1369, § 3, eff. Oct. 2, 1989.

10

1   unequivocal that for the purpose of a suit brought by a subcontractor's employee "a general

2   contractor is no longer an employer within Section 6304."[5]  Spencer, 63 Cal. App. 3d at 861;

3   Elsner, 130 Cal. Rptr. at 492-493.

4          The Labor Code's definition of "employee" provides additional guidance.   Section 6304.1

5   defines employee as "every person who is required or directed by any employer to engage in any

6   employment or to go to work or be at any time in any place of employment." Cal. Labor Code

7   Section 6304.1(a).  This strongly suggests that an "employee" is defined by his employer's direct

8   control over his activities.

9          This definition also accords with accepted principles of agency and employment law.  In

10  Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992), the Supreme Court held that

11  absent a specific statutory definition, courts should "incorporate traditional agency law principles"

12  unless doing so "would thwart the congressional design or lead to absurd results."  Looking to the

13  Second Restatement of Agency, the Supreme Court identified several indicia of

14  employer/employee relationship pertinent to the instant case, including "the hiring party's right to

15  control the manner and means" of work, "whether the hiring party has the right to assign

16  additional projects to the hired party," and "the extent of the hired party's discretion over when

17  and how long to work." Id. at 323-324.  Significantly, the Supreme Court refers throughout to "the

18  hiring party," supporting the conclusion that the hiring entity, and not a contractor at one remove

19  from the hiring process, fits the definition of employer.  This further corroborates Section 6310's

20  presumptive application only to the direct employers of the complaining employee.

21                          **i.       Controlling Employer**

22          Without explaining why the Court should deviate from the statutory definition provided in

23  Section 6304, or distinguishing the authority cited *supra*, Plaintiff argues that the workplace safety

24  regulations at 8 Cal. Code Reg. § 336.10(c) indicate that Turner falls within the scope of Section

25

26

27  _____

    [5] Prior to the 1971 amendment, Section 3604 read "'[e]mployer' shall have the same meaning as
28  in Section 3300 and shall also include every person having direction, management, control, or
    custody of any employment, place of employment, or any employee."

United States District Court
Northern District of California

1    6310.  Su Opp. to Def. MSJ at 10.[6]  8 C.C.R. § 336.10 lists four categories of employers who may

2    be cited for occupational safety and health violations.  One of these categories is the "controlling

3    employer": "[t]he employer who was responsible, by contract or through actual practice, for safety

4    and health conditions on the worksite; i.e., the employer who had the authority for ensuring that

5    the hazardous condition is corrected."  Id.  Plaintiff argues that Turner fits within this category,

6    and notes that under this provision, "[t]he employers listed . . . may be cited regardless of whether

7    their own employees were exposed to the hazard."  Id.

8         This regulation (and the statutory provision that later adopted its language) deal with

9    government-imposed citations for occupational safety and health violations, not the retaliation

10    prohibition at issue in this case.  For purposes of making companies citable for safety violations,

11    the regulation addresses the degree of control the entity exercises over the conditions of a

12    worksite.  See 8 Cal. Code Reg. § 336.10(c).

13        Unlike the provisions of Section 336.10/6400(b), Section 6310 applies a more limited

14    scope of the term "employer."  Section 6310 does not apply to *any* employer, it protects only

15    complaints made to "*his or her* [i.e., the complainants'] employer."  In determining who qualifies

16    as a *particular* worker's "employer" under Section 6310, Section 336.10/6400(b)'s general

17    definition of an "employer" who can be cited for safety violations is of no assistance.  The fact

18    that the government can cite a company for endangering the safety of its subcontractor's

19    employees does not mean that that employer must be considered those employees' employer for

20    purposes of Section 6310.

21                     **ii.    Indirect Complaints**

22        Plaintiff further contends that summary judgment should be denied because Anderson's

23    complaint to Turner was later conveyed to Siemens, and "thus . . . Anderson made the complaints

24    to Defendant, though indirectly."  Su Opp. MSJ at 11.  Plaintiff cites no legal authority for her

25    "indirect complaint" theory.

26

27    ---
       [6] Plaintiff cites the regulatory language at 8 Cal. Code Reg. § 336.10 rather than the statutory
       language at Cal. Lab. Code § 6400(b), but they have precisely the same text. The Court refers to
28    the provision as "Section 336.10/6400(b)" hereinafter.

1    Indeed, applying an indirect complaint theory of liability to Section 6310 would undermine

2 its requirement that an employee make an "oral or written complaint *to . . . his or her employer*."

3 Cal. Labor Code § 6310 (italics added). Under Plaintiff's reasoning, an employer could be held

4 liable based on a complaint made to a *non*-employer, who later relayed the complaint to an

5 employer. This undermines the unambiguous language of the statute. As the statute is written, an

6 "indirect" complaint cannot establish liability under Section 6310.

7                              **d.    Conclusion**

8    For the foregoing reasons, Defendant is entitled to judgment in its favor as a matter of law

9 as to all claims in this action relating to complaints made to Turner Construction.

10    However, the inquiry does not end here. The Court now considers complaints made

11 directly to Siemens through project manager David Slotta.

12                         **2.    Complaints to Siemens**

13                              **a.    Causation**

14    To establish a *prima facie* employment retaliation case the Plaintiff must show that a

15 causal link existed between the protected activity and the adverse action. <u>Yankowitz</u>, 36 Cal. 4th at

16 1042. The causation element of a plaintiff's *prima facie* case requires the employer's "retaliatory

17 animus [to be] a but-for cause of the employer's adverse action." <u>Reeves v. Safeway Stores, Inc.</u>,

18 121 Cal. App. 4th 95, 108 (2004) (citations omitted).[7]

19  _____

20  [7] The Court's conclusion on summary judgment would not be altered by whether the test of
causation is "but-for" or "substantial factor." However, the Court notes that the operative standard
21  for Section 6310 claims is not entirely clear. Plaintiff observes that the California Supreme Court
adopted the "substantial factor" test in <u>Harris v. City of Santa Monica</u>, 56 Cal. 4th 203, 211
22  (2013), albeit in a limited fashion. <u>Harris</u> held that the substantial factor test applies to the liability
stage of trial, but "when the employer proves it would have made the same decision absent such
23  discrimination, a court may not award damages, backpay, or an order of reinstatement." However,
the <u>Harris</u> court was considering a FEHA unlawful discrimination claim brought under Section
24  12920.5, and its decision was largely predicated upon an interpretation of the analogous section of
Title VII, 42 U.S.C. § 2000e-2(m). <u>See Harris</u>, 56 Cal. 4th at 222 ("Because of the similarity
25  between state and federal employment discrimination laws, California courts look to pertinent
federal precedent when applying our own statutes . . . "recourse to federal antidiscrimination law
26  is instructive only to the extent that its purpose and the FEHA's purposes are aligned."). There is
no intimation that <u>Reeves</u>, also a retaliation case, was overruled by <u>Harris</u>, a discrimination case.
27  <u>See Reeves</u>, 121 Cal. App. 4th at 100. After <u>Harris</u>, the U.S. Supreme Court held in <u>University of</u>
<u>Texas Southwestern Medical Center v. Nassar</u>, __ U.S. __, 133 S.Ct. 2517, 2528 (2013) that the
28

United States District Court
Northern District of California

It is undisputed that Anderson and Pitschner made safety complaints to Siemens' superintendent Dave Slotta.  Anderson Dep. 216-219; Pitschner Dep. 266, 271-272.  Defendant also does not dispute that such complaints constitute protected activity under Section 6310.  However, Defendant contends that Complainants have not shown, and cannot show, that their complaints to Siemens resulted in an adverse employment action.  Def. MSJ 13, 16; see Yankowitz, 36 Cal. 4th at 1042.

In support of its position, Defendant points to Anderson and Pitschner's deposition testimony, noting that each Complainant testified that his layoff was solely attributable to the complaint made to Turner. Def. MSJ at 10.  The relevant testimony is reproduced below:

> Q: . . . The retaliation that you believe was caused to you by Siemens Industry was . . . because you investigated and went to Turner about the near misses?
>
> A: [by Anderson] Correct.
>
> Q: And any other reason?
>
> A: No other reason I can see.

Anderson Dep. 232-233.

> A: [Pitschner] . . . I go home to deal with my license plate issues, and when I come back, I'm laid off, and I believe it's all in retaliation for my father's actions.

---

test for causation under Title VII's antiretaliation provision, 42 U.S.C. § 2000e-3(a), is distinct from the test for causation under the antidiscrimination provision.  Unlike antidiscrimination cases, "retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  Id. (citing Gross v. FBL Financial Services, Inc., 557 U.S. 167, 176 (2009)); see also Brooks v. Capistrano, _F. Supp. 2d__ , No. SA-cv-12-01934-JLS, 2014 WL 794581 at *6  (C.D. Cal. Feb. 20, 2014) (finding that, in light of Nassar, "ADA retaliation claims are also subject to a but-for causation standard").  On the other hand, at least one California Court of Appeal has, after Harris, applied the "substantial motivating factor test," as does CACI.  Mendoza v. Western Medical Center Santa Ana, 222 Cal.App 4th 1334, 1341 (2014) (citing Judicial Council Of California Civil Jury Instruction 2430).  Nonetheless, the Court is persuaded by the reasoning in Nassar, and therefore applies the but-for causation standard followed in Reeves to the present retaliation claim. See also Cuevas v. Sky West Airlines, No. 12-05916 CRB 2014 WL 595938 at *6  (N.D. Cal. Feb. 14, 2014) (applying Reeves but-for causation to a Section 6310 retaliation claim);

1    Pitschner Dep. 151.  Plaintiff disputes Defendant's assertion that Anderson's safety complaint to

2    Turner was the only cause of retaliation.  Su Opp. MSJ at 11.  Plaintiff observes that "Anderson

3    complained to Slotta several times over the course of months" and that the Turner complaint "was

4    the last in a series" of complaints.  Id.  Additionally, Plaintiff points to several safety complaints

5    made by Pitschner to Slotta, which elicited rebukes from Slotta.  Su MSJ at 4; Pitschner Dep. 280-

6    281, 304-305.

7         The question is whether a reasonable jury could find that, but for the direct complaints to

8    Siemens, Anderson and Pitschner would not have been laid off.  See Reeves, 121 Cal. App. 4th  at

9    108; Anderson, 477 U.S. at 248-249.  The Court addresses this issue as to each Complainant

10   individually.

11                          **i.**        **Anderson's Complaints to Slotta**

12                          **(a)**     ***Prima Facie* Case**

13         Anderson's deposition testimony reveals numerous complaints that he made directly to

14   Siemens's superintendent, Slotta.  Anderson Dep. 216-219, 152-153.  However, when asked

15   whether he believed he was terminated for any of these complaints, Anderson asserted that he was

16   not, and that making these complaints was part of his job.  Id. at 218-219, 231.  Anderson testified

17   that "Dave [Slotta] approved of every one of those [complaints]."  Id. at 219.  When pressed on

18   this point, Anderson maintained that only the "near misses and the circumstances surrounding

19   them" played a role in his termination.  Id.  He then clarified that this included his "investigation"

20   of what caused the collision, and his "talking to the union" and "Turner" about it.  Id.[8]

21         Aside from this exchange, Plaintiff cites only one other complaint that Anderson made to

22   Slotta: his objection to Slotta's failure to train workers regarding safe forklift operations.  Id. at

23   152-153, 160.  Anderson testified that he made this same complaint "month after month" to no

24   avail.  Id. at 160.  However, he also testified that, despite these complaints, his relationship with

25

26   _____

27   [8] Following this testimony, Anderson said "that's the primary reason I was on the layoff."
     Anderson Dep. 219. The examiner then asked him, "is there a secondary reason?" Id. The answer
     to that question was not provided to the Court.  Page 220 of Anderson's deposition was not

28   included in the record by either party.

United States District Court
Northern District of California

1    Slotta remained good until he reported the near misses to Turner.  Id. at 153.

2          As Defendant observes, none of Anderson's safety complaints to Siemens were closely

3    followed by adverse employment actions.  Def. MSJ 13.  Rather, his layoff (the only adverse

4    action he claims to have suffered) followed shortly after his complaint to Turner.  Moreover,

5    Anderson himself testified that it was the Turner complaint alone that resulted in his layoff.

6    Anderson Dep. 232-233.

7          However, this is not enough to show that there is "no genuine dispute as to any material

8    fact." Fed R. Civ. P. 56(a).   Plaintiff notes that the Turner complaint "was the last in a series" and

9    that Anderson had "complained to Slotta several times over the course of months about the need

10   for forklift training. Su Opp. at 11; Anderson Dep. 160.

11         As Defendant points out, Anderson has made potentially damaging concessions in

12   deposition: that he does not believe he was terminated for any reason except for the complaints he

13   made to Turner.  Anderson Dep. 232-233.  However, there is no indication that Anderson has

14   sufficient personal knowledge of the decision-making process for his opinion to be anything more

15   than conjecture.  Regardless of Anderson's expression of belief at deposition, Plaintiff is not

16   precluded from showing that the other complaints preceding the Turner complaint were, standing

17   alone, a but-for cause of Anderson's termination.[9]

18         In a retaliation case, "[t]he causal link may be established by an inference derived from

19   circumstantial evidence."  Jordan v. Clark, 847 F. 2d 1368, 1376 (9th Cir. 1988).  "Evidence of an

20   employer's knowledge of the employee's protected activity, where the adverse employment action

21   follows soon after, can be sufficient to support an inference of causation."  Cuevas v. Sky West

22   Airlines, 12-05916 CRB, 2014 WL 595938 at *6 (N.D. Cal. Feb. 14, 2014).  Here, the employees'

23   _____

24   [9] In his Declaration, Anderson indicates that Slotta made several threats to fire him prior to the
     "near misses." Anderson Decl. ¶ 3-5.  However, this assertion directly contradicts his deposition
25   testimony that his job had never been threatened before the prior miss incident. See Anderson
     Dep. 29 ("Q: Did Dave Slotta threaten to fire you at any point in time . . . prior to the near misses
26   incident? A: No.")  Anderson's later declaration does not in any way explain this inconsistency.  A
     party cannot "create a triable issue of fact, and thus survive summary judgment, merely by
27   contradicting his or her own sworn deposition testimony with a later declaration." Disc Golf
     Ass'n, Inc. v. Champion Discs, Inc., 158 F. 3d 1002, 1008 (9th Cir. 1998).  Accordingly, the Court
28   does not consider this portion of Anderson's declaration.

United States District Court
Northern District of California

1    direct supervisor, Slotta, was clearly aware of the protected activity, and in fact was the conduit

2    through which the protected activity was performed.

3            Drawing all inferences in the light most favorable to Anderson, Plaintiff has presented a

4    genuine issue upon which a reasonable fact finder could conclude that but for his repeated

5    complaints to Slotta in the months leading up to the Turner complaint, Anderson would not have

6    been terminated.

7                            **(b)        Legitimate Non-Retaliatory Reason**

8            Given that Anderson has made out a *prima facie* case, the burden shifts to Defendant to

9    show that there was a legitimate, non-retaliatory reason for Anderson's layoff.  See Yankowitz, 36

10   Cal. 4th at 1042.  Defendant contends that in March, 2010, the SFO project "had progressed to the

11   point that Siemens no longer needed four of the millwrights."  Def. MSJ at 8.  In determining who

12   should be laid off, Defendant asserts that Slotta's supervisor considered production reports

13   provided by Slotta.  Id.

14           Defendant asserts that Anderson was the least productive foreman on the site.  Def. MSJ at

15   8; Carney Decl. Ex. K.  Further, Defendant attaches exhibit H, Slotta's notes about Anderson,

16   which enumerate a series of complaints having to do with Anderson not being in his work area,

17   directing other crews, and starting rumors.  Def. MSJ 8; Carney Decl. Ex. H.  Defendant has

18   offered sufficient evidence of a legitimate motive for terminating Anderson to shift the burden

19   back to Plaintiff to demonstrate pretext.[10]

20                            **(c)        Pretext**

21           "If the employer produces a legitimate reason for the adverse employment action, the

22   presumption of retaliation drops out of the picture and the burden shifts back to the employee."

23   Yankowitz, 36 Cal. 4th at 1042 (citations and internal quotation marks omitted).   At the summary

24   judgment stage, an employee meets this burden if he shows that the employer's justification for

25   the adverse action is "untrue or pretextual," or if he produces "evidence that the employer acted

26

27   _____

     [10] Defendant also asserts that production reports prepared by another on-site manager, Patrick
28   Grattan, indicate that Slotta was producing "only half as many conveyors as the other foreman on
     the job," but no such reports are attached to the record.

17

[in retaliation], or a combination of the two." <u>Horn v. Cushman & Wakefield Western, Inc.</u>, 72 Cal. App. 4th 798, 806 (1999).[11] "Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." <u>Brown v. City of Tucson</u>, 336 F. 38 1181, 1188 (9th Cir. 2003).

Plaintiff's showing – that  Anderson made several complaints in the months leading up to his layoff – is sufficient to create a triable issue of fact regarding pretext, notwithstanding the legitimate reason for termination given by Defendant.  <u>See</u> <u>id.</u>

### ii.    Pitschner's Complaints to Slotta

### (a)    *Prima Facie* Case

Pitschner testified that he also complained to Slotta about worksite safety.  Pitschner Dep. 256, 266, 280, 304-305.  Pitschner further testified that Slotta rebuked him for making these complaints on three separate occasions.  <u>See</u> <u>id.</u>  On the first occasion, Pitschner complained about a coworker's unsafe forklift driving, to which Slotta responded, "[y]ou don't tell me how to run my crew."  <u>Id.</u> at 280. On the second occasion, Pitschner complained that a worker had left a load on his forklift with the forks in the raised position.  <u>Id.</u> at 304-305.  This time, Slotta responded, "[y]ou know, all this bullshit and the drama you guys are going through . . . [t]his shit needs to stop."  <u>Id.</u>  In the final encounter mentioned by Plaintiff, Pitschner complained to Slotta that he was given a license to operate the forklift, but not any training.  <u>Id.</u> at 272.  Pitschner expressed concern that if there was an accident someone might find out he had not been trained.  <u>Id.</u>  Slotta responded, "[i]f it comes out, it's because you opened your mouth, and if you open your mouth, I'll get both you and [Anderson] your checks."  <u>Id.</u>

In its Motion, Defendant again points the Court to several passages in which Pitschner testified that Siemens took no adverse action against him for the complaints he raised.  <u>Id</u> at 151, 319-321.  In both of these statements, Pitschner indicated that he believes he was laid off because of his father's complaint to Turner.  <u>Id.</u>

---

[11] The <u>Horn</u> court notes that there is some disagreement about what an employee must do to avoid summary judgment in the face of a legitimate reason given by his employer, but that its approach represents the "predominant view."  <u>Horn</u>, 72 Cal. App. 4th at 806.

United States District Court
Northern District of California

1    However, unlike Anderson, Pitschner contends that his complaints to *Siemens* were

2    repeatedly met with hostility, and that he was even threatened by Slotta that if he let anyone know

3    he had not been given proper forklift training, Slotta would fire him.  Pitschner Dep. at 272.  A

4    reasonable jury could infer that these complaints were the cause of Pitschner's termination.  Thus,

5    the Defendant has not "negated an essential element" of Plaintiff's *prima facie* case.  See Nissan

6    Fire & Marine Ins. Co., 210 F. 3d at 1102.

7                          **(b)        Legitimate Non-Retaliatory Reason**

8    Accordingly, the burden remains with Defendant to show that there was a legitimate, non-

9    retaliatory reason for Pitschner's layoff.  See Yankowitz, 36 Cal. 4th at 1042.  To that end,

10   Defendant contends that in March, 2010, the SFO project "had progressed to the point that

11   Siemens no longer needed four of the millwrights."  Def. MSJ at 8.  In determining who should be

12   laid off, Defendant asserts that Slotta's supervisor considered production reports provided by

13   Slotta.  Id.

14   Defendant contends that Pitschner was a slow worker, and was laid off because he was

15   among the four least productive workers on the site.  Slotta Dep. 114.   In support of this rationale,

16   Defendant attaches exhibit H, apparently Slotta's notes about Pitschner and Anderson.  Def. MSJ

17   8-9; Carney Decl. Ex. H.[12]  That exhibit contains one note indicating a slow work pace, two

18   indicating that Pitschner was away from his work area, and three indicating that Pitschner was

19   "starting rumors" or "running rumors."  Id.  Additionally, Defendant attaches exhibit K, which

20   shows worker's production levels in March, 2010.  Def. MSJ 8; Carney Decl. Ex. K.  This exhibit

21   compares the number of tasks that each worker completed, and indicates that Pitschner completed

22

23   [12] The precise value of these notes is unclear.  They are not authenticated, at least in the underlined
24   portion of Slotta's deposition that Defendant submitted.  Assuming they are in fact Slotta's notes,
     however, they appear to be irrelevant.  Slotta disclaims any role in deciding to terminate Anderson
25   or Pitschner; he said that Kelly Scott made that decision.  Slotta Depo. 113:6-11.  Slotta testified
     that prior to deciding whom to terminate, Scott evaluated, or at least received, Slotta's weekly
26   production reports regarding Slotta's crew members.  Slotta Depo. 110:7-17.  But the production
     reports are Exhibit K, not Exhibit H.  Thus, if Slotta's testimony is to be believed, Exhibit H had
27   nothing to do with Anderson or Pitschner's termination.  Nonetheless, assuming that Scott
     reviewed Exhibit K before making the decision to terminate, Defendant has still met its burden of
28   showing a legitimate, non-retaliatory reason.

1   far fewer than others. See Carney Decl. Ex. K.  Defendant has offered sufficient evidence of a

2   legitimate motive for terminating Pitschner to shift the burden back to Plaintiff to demonstrate

3   pretext.

### (c)      Pretext

5        "If the employer produces a legitimate reason for the adverse employment action, the

6   presumption of retaliation drops out of the picture and the burden shifts back to the employee."

7   Yankowitz, 36 Cal. 4th at 1042 (citations and internal quotation marks omitted).   At the summary

8   judgment stage, an employee meets this burden if he shows that the employer's justification for

9   the adverse action is "untrue or pretextual," or if he produces "evidence that the employer acted

10  [in retaliation], or a combination of the two."  Horn v. Cushman & Wakefield Western, Inc., 72

11  Cal. App. 4th 798, 806 (1999).[13]  "Circumstantial evidence of pretext must be specific and

12  substantial in order to survive summary judgment."  Brown v. City of Tucson, 336 F. 38 1181,

13  1188 (9th Cir. 2003).

14       Plaintiff's showing – that Pitschner made several complaints in the months leading up to

15  his layoff that were severely rebuked by Slotta – is sufficient to create a triable issue of fact

16  regarding pretext, notwithstanding the legitimate reason for termination given by Defendant.  See

17  Id.  Plaintiff also points to the testimony of George Davis, Pitschner's foreman in the month

18  leading up to his termination, that Pitschner was a "good worker."  Davis Dep. 31.  This too

19  corroborates Plaintiff's position that his termination was retaliatory, and supports the Court's

20  conclusion that a genuine dispute of fact remains.

21  ### B.      Damages

22       Under Section 6310, an employee "shall be entitled to reinstatement and reimbursement

23  for lost wages and work benefits caused by the acts of the employer."  Cal. Labor Code § 6310(b).

24       Defendant argues that Complainants' damages are limited as a matter of law in two

25  respects. Def. MSJ at 20, 22.  First, Defendant contends that Complainants cannot recover

26  damages beyond the date that the SFO project ended.  Id. at 22.  Second, Defendant contends that

27

28  [13] See footnote 11, supra.

United States District Court
Northern District of California

20

United States District Court
Northern District of California

1    Complainants cannot recover contributions made to the union benefit trust fund because

2    Complainants never received payment of these benefits, and therefore could not have "lost" them.

3    Id. at 20.

4                    **1.      Project End Date**

5          There is no dispute that the construction project at SFO ended on or around April 15, 2011.

6    Def. MSJ at 22; Anderson Dep. 84-85.  However, Plaintiff contends that Siemens secured a

7    contract for maintenance and operation of the system extending two years beyond the completion

8    of construction, and that Slotta had discussed with Complainants the possibility that they would be

9    retained to perform maintenance work, and later specifically offered them the job.  Su Opp. to

10   MSJ at 23; Anderson Dep. 260.

11         Along with its Motion, Defendant submitted the Declaration of Lee Katchen, which

12   Siemens claims is the employee actually "responsible for hiring individuals for the operation and

13   maintenance of the baggage handling system."  Katchen Decl. ¶ 2.  Katchen declared that the

14   operation and maintenance job "is a non-union position" and he "did not interview or hire any

15   individuals from the union hiring hall."  Id. ¶ 3.  He further stated that he "reviewed the

16   qualifications and work history" of Complainants "and can affirmatively state that even if either

17   had applied for the O&M position or been recommended by David Slotta . . . I would not have

18   hired these individuals . . . as they did not have the necessary qualifications."[14, 15]  Id. ¶ 4.

19   ────────────────────

20   [14] Even if admitted for their truth, these statements do not establish that there is no triable issue as
     to whether Complainants would have been hired for the maintenance job.  However, Plaintiff does

21   object to Katchen's assertion that he reviewed the "qualifications and work history of Charles
     Anderson and Charles Pitschner" and on that basis determined they were unqualified for the

22   maintenance position. Plaintiff's Objections to Evidence Submitted in Support of Defendant's
     Motion for Summary Judgment, ECF No. 88 at 2. Plaintiff objects that Katchen offers "no

23   foundation for or description of any 'qualifications' or 'work history'" of Complainants. Id. The
     objection is sustained because there is no showing of how Katchen came to know of

24   Complainants' qualifications or work history. Katchen has not indicated the source of his
     information about Complainants' work history.  Accordingly, the Court cannot say that the

25   assertion that Complainants are unqualified is "rationally based on the witness's perception."  Fed.
     R. Evid. 701(a).  Presumably he consulted some document to reach his conclusion, but there is no

26   showing of authentication. Fed. R. Evid. 901.  Accordingly, this statement may not be used as
     evidence insofar as it pertains to Complainants' qualifications.

27

28   [15] Unless otherwise indicated, the Court did not consider evidence that was objected to in reaching

1       Moreover, Defendant argues, and Katchen's Declaration appears to corroborate, that even

2   had Siemens decided to hire Complainants for the maintenance and operation, they would have to

3   have applied for that position because it was separate from the SFO construction job.  Def. MSJ at

4   22 n. 15.  In other words, even if Siemens selected Complainants for the maintenance job, they

5   would have first been laid off from the construction job and then rehired.  Id.

6       Plaintiff disputes Katchen's characterization of Complainants as unqualified, noting their

7   previous experience in similar positions.[16]  Su Opp. to MSJ at 24.  Ultimately, there are material

8   facts in dispute—first, whether Complainants were qualified for the position, second, whether

9   Slotta ever had the authority to offer them the job.  Though Katchen's declaration is persuasive,

10   the Court must draw all inferences in the light most favorable to the non-moving party.  Freeman,

11   125 F. 3d at 735.  Resolution of this issue requires a weighing of the evidence, and is therefore

12   appropriate for the jury.

13       Defendant further moves on the ground that Plaintiff is precluded from recovering

14   damages beyond April 15, 2011 by judicial estoppel.  Def. MSJ at 23.  In the Complaint in this

15   action, Plaintiff states that "the findings of the Director [of Industrial Relations] were adopted by

16   the State Labor Commissioner in Decisions issued March 29, 2012."  ¶ 15.  Among those findings

17   was the conclusion that there could be no award of backpay beyond April 2011.  Defendant argues

18   Plaintiff should be estopped from arguing to the contrary in this action.

19       Judicial estoppel "precludes a party from gaining an advantage by taking one position and

20   then seeking a second advantage by taking an incompatible position."  Risetto v. Plumbers and

21   Steamfitters Local 343, 94 F. 3d 597, 600-601 (finding judicial estoppel where plaintiff claimed

22

23   its determination, and for that reason does not respond to those objections.

24   [16] Defendant objects to Anderson's reference to his son's qualifications for the maintenance job on
the grounds that he lacks foundation and is not competent to testify to the matter under Rule 701,

25   Opinion Testimony by Lay Witnesses.  The objection is overruled. Anderson's declaration
indicates what past jobs Pitschner has held, and that he believes the jobs are similar enough to

26   qualify Pitschner for maintenance work on the SFO project.  This is Anderson's opinion, and is
"rationally based" on his perception of what the work entails. Fed. R. Evid. 701(a).  That he does

27   not know the exact criteria of this particular job does not prevent him from offering evidence of
his son's past positions and his opinion that they qualify him for such work.  However, even if this

28   particular declaration were inadmissible, there is sufficient admissible evidence to create a triable
issue.

United States District Court
Northern District of California

1    she was unable to perform her job in order to obtain workers' compensation, and later tried to

2    claim that she had performed her job adequately in order to win damages in a wrongful discharge

3    suit).  That is simply not what happened here.  Plaintiff gained no advantage in taking the first

4    position; she merely asserted what she then believed to be the end date for damages.  Plaintiff has

5    now explained why she believes that date was incorrect, and damages may be appropriate beyond

6    April 15.  This is an issue for the jury to decide.

7           **2.      Fringe Benefits**

8           Defendant next contends that Complainants are not entitled to recover fringe benefits as a

9    matter of law.  Def. MSJ at 20.

10          In Galindo v. Stoody Co., 793 F. 2d 1502, 1517-18 (9th Cir. 1986), the Ninth Circuit

11   addressed the issue of whether an employee could be awarded a sum for lost health and medical

12   coverage following a wrongful discharge.  The court held that she could not.  Id.  It reasoned that

13   unless an employee purchases substitute benefits or pays out of pocket medical expenses, she has

14   suffered no measurable loss, and that "[t]o include such an award, then, would make a plaintiff

15   more than whole."  Id.

16          Plaintiff argues that Galindo is inapposite because there the court was interpreting federal

17   law rather than California law.  She then cites several California cases predating Galindo,

18   including County of Alameda v. Fair Employment & Housing Com., 153 Cal. App. 3d 499 (1984),

19   which allowed an award for lost medical benefits without any showing of out of pocket expense to

20   the plaintiff.  Su Opp. at 17-18.  However, in EEOC v. Farmer Bros. Co., the Ninth Circuit,

21   specifically interpreting California law, again affirmed the principle established in Galindo,

22   holding that "lost insurance coverage, unless replaced or unless actual expenses are incurred, is

23   simply not a monetary benefit owing to the plaintiff."  31 F. 3d 891, 902 (9th Cir. 1994) (quoting

24   Galindo, 793 F. 2d at 1517).  Recognizing that this "method of calculating damages set forth in

25   Galindo, disadvantages those who cannot afford to pay insurance premiums after being

26   discharged," the court held that "[n]onetheless, we are bound by the Ninth Circuit precedent and,

27   therefore, we remand with instructions that the district court calculate [plaintiff's] lost health and

28

United States District Court
Northern District of California

23

1    life insurance benefits based on her out-of-pocket expenses."[17]

2          This Court is bound by the Ninth Circuit's ruling.  Accordingly, it grants Defendant's

3    motion to preclude from any award fringe benefits that Complainants would not have actually

4    received, and did not replace or otherwise pay out of pocket.

5    **IV.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

6          Plaintiff moves for partial summary judgment on three grounds.  Su MSJ, ECF No. 85 at

7    10.  First, Plaintiff contends that the arbitrator made a factual finding that Complainants were

8    terminated as retaliation for safety complaints made to Turner, and that Defendant should be

9    collaterally estopped from asserting otherwise.  Id.  Alternatively, Plaintiff argues that the facts in

10   evidence establish a *prima facie* retaliation case, and that Defendant is unable to rebut this charge

11   because he cannot produce any first-hand evidence of a legitimate reason for termination without

12   proffering a sham declaration.  Id. at 10-11.  Finally, in the event Plaintiff's claims succeed,

13   Plaintiff seeks a finding that Complainants would have been employed until at least November 24,

14   2010 because that was the next time any subsequent lay-offs occurred.  Id. at 11.

15         Defendants contend that 1) it is improper to give preclusive effect to only a portion of the

16   arbitrator's findings, and when viewed as a whole those findings do not establish that

17   Complainants were laid off for having made safety complaints; 2) the Court cannot apply

18   collateral estoppel to the arbitrator's findings because those findings did not consider the statute at

19   issue in the present litigation; 3) Defendant can establish a legitimate reason for Complainants'

20   termination, and is not estopped from presenting evidence contrary to what was presented in the

21   arbitration proceeding; and 4) there is no legal or logical support for the proposition that

22   Defendants would not have been laid off until November 24, 2010 absent their safety complaints.

23

24   _____

25   [17] In reaching its conclusion, the Ninth Circuit took note of <u>Richardson v. Restaurant Marketing</u>
     <u>Ass., Inc.</u>, 527 F.Supp. 690, 698 (N.D.Cal.1981), which approved of the earlier line of California

26   authority, awarding backpay of lost benefits where the employer "would have contributed to the
     union Health and Welfare fund ... [because] [f]ailure by plaintiffs to buy replacement coverage

27   was due to an inability to afford such coverage rather than a lack of desire for it." However, in
     <u>Galindo</u>, the court chose not to follow that line of reasoning.

28

United States District Court
Northern District of California

## A.     Collateral Estoppel

A prior determination will be given collateral estoppel effect where 1) this issue presented is identical to that decided in the former proceeding; 2) the issue was actually litigated and 3) necessarily decided as a part of that litigation; 4) the doctrine is asserted against a party to the former action, or a party in privity; and 5) the former decision is final and was made on the merits. Kelly v. Vons Companies, Inc., 67 Cal.App.4th 1329, 1339 (1998).  Courts have applied collateral estoppel to the fact finding of arbitration proceedings, where those facts satisfied all of the elements of collateral estoppel.  See e.g. Conner v. Dart Transportation Service, 65 Cal. App. 3d 320, 323 (where a fact found in a prior proceeding "negates the existence of a triable issue of fact" in a later proceeding, that fact will be given preclusive effect).

Plaintiff first argues that collateral estoppel should apply to the arbitrator's factual findings because those findings are identical to the findings that will be necessary to determine the present issue, and therefore meet the 'identical issue' requirement of collateral estoppel.  ECF No. 85 at 12-13.

The portion of the arbitrator's decision upon which Plaintiff relies reads, in pertinent part:

> Mr. Anderson and Mr. Pitschner were laid off in retaliation for conduct which Mr. Slotta found to be offensive.  The evidence establishes that Mr. Anderson received a written warning from Mr. Slotta.   In retaliation for receiving the written warning, Mr. Anderson reported a number of safety violations committed by Mr. Slotta, including issuing forklift certificates without the requisite training.  While Mr. Anderson was aware of these alleged violations for months prior to reporting them, he waited and reported them as a means of retaliation against Mr. Slotta.  Mr. Slotta, in turn, retaliated against Mr. Anderson by selecting him and his son for layoff when the opportunity for layoff occurred.

J. Smith Decl., Ex. A, Decision and Award of the Arbitrator at 4.  Plaintiff contends that this passage establishes that the arbitrator found that Complainants were laid off due to Mr. Anderson's reporting safety violations.  Su MSJ 13.

But Plaintiff seeks to use estoppel here to establish that "complainants were terminated by Defendant in retaliation for Anderson's safety complaints *to general contractor Turner Construction*."  Su MSJ at 10.  As discussed above, this is not a legal ground for relief under

1   Section 6310, and accordingly, even if the Court treated the fact as established, it is immaterial to

2   this proceeding.  See supra.

3       **B.    Inconsistent Testimony**

4       Plaintiff further contends that Defendant cannot rebut Plaintiff's *prima facie* case because

5   it "cannot meet its burden of providing a legitimate, non-discriminatory" justification "for the

6   terminations" of Anderson and Pitschner.  Su MSJ at 22-23.  Plaintiff reasons that Defendant is

7   precluded from offering a non-discriminatory reason for its action because Slotta, Complainant's

8   direct supervisor, "denied having anything to do with the terminations" in his deposition, but the

9   arbitrator earlier found that Slotta made the decision to terminate Complainants.  Id. at 23; see

10  Decision and Award of Arbitrator at 4.

11      Accordingly, Plaintiff contends that Slotta's deposition statements preclude Defendant

12  from now asserting that Slotta made a non-retaliatory decision to terminate Complainants.  Id. at

13  24.  At the same time, Plaintiff asserts that Defendant "would be judicially estopped from

14  presenting evidence that someone other than Slotta decided to terminate complainants," because

15  statements made by Slotta's attorney at the June 8, 2010 grievance proceedings acknowledged that

16  Slotta was the ultimate decision maker.  Id. 23-24; see M. Smith Decl., Ex. D, Carpenters

17  Grievance Proceedings.  Ultimately, Plaintiff contends that this leaves Defendant unable to

18  produce any "first hand evidence with regard to the reason for the . . . terminations."  Su MSJ at

19  24.

20      In response, Defendant first contends that Slotta's attorney's earlier statement does not

21  preclude Defendant from offering a rebuttal because "a mere offer of proof does not constitute a

22  judicial admission, and this is certainly true where…the statement was made in a prior

23  proceeding."  Def. Opp. at 10 n. 10.

24      Defendant is correct.  In BNSF Ry. Co. v. O'Dea, 572 F.3d 785, 793 n.4 (9th Cir. 2009),

25  the Ninth Circuit observed that statements made in prior proceedings are not binding judicial

26  admissions.  In other words, Defendant is not precluded from now taking a different position than

27  it took at the administrative hearing.  Moreover, as Defendant observes, Slotta did not testify at

28

United States District Court
Northern District of California

1   that hearing; rather, his attorney gave an offer of proof.[18]  He is not now bound by Siemens'

2   counsel's offer of proof at the labor arbitration.

3          Defendant further contends that Slotta's testimony that he did not "ma[k]e the decision" to

4   lay off Anderson and Pitschner is not preclusive of, nor necessarily contradictory to, a showing

5   that there were legitimate reasons for their termination.  Contrary to Plaintiff's assertion that Slotta

6   "denied having anything to do with the terminations," Defendant notes that Slotta testified that he

7   provided production reports to the decision maker, and that those reports showed Anderson and

8   Pitschner were among the least productive employees on the job.  Def. Opp. at 10 n.11.

9          Finally, Defendant contends that even if Slotta's position in his deposition is inconsistent

10  with the testimony of defense witnesses at trial, this does not preclude Defendant from showing it

11  made its decision for legitimate business reasons; rather, "it means the jury would have to decide

12  whether Slotta, or other defense witnesses, are credible."

13         Defendant's reasoning is sound.  If Slotta now testifies that he was not involved in the

14  decision and Defendant puts on evidence that he was, this merely presents a credibility issue for

15  the jury.

16         **C.     Remedy**

17         Finally, Plaintiff contends that the there is no genuine dispute that Complainants would

18  have been laid off no earlier than November 24, 2010 had they not been laid off in March of 2010.

19  ECF No. 85 at 24.  In support of her claim, Plaintiff notes that no other layoffs occurred before

20  that date, though other workers quit or retired between the March and November layoffs.  Id.  To

21  that end, Plaintiff asks the Court, for the purpose of establishing damages, set November 24, 2010

22  as a date before which the Complainants could not have been laid off.  Id.

23

24  _____

    [18] In addition, Defendant lodges a hearsay objection to Plaintiff's "seeking to admit an offer of
25  proof made at arbitration by Defendant's former attorney as evidence."  Defendant's Objections to
    Evidence Submitted in Support of Plaintiff's Motion for Partial Summary Judgment, ECF No. 89-
26  3 at 2.  The offer of proof was the out-of-court statement of a third party about what Slotta would
    say.  There is no assertion that it was part of sworn testimony or subject to cross examination.  To
27  the extent that Plaintiff attempts to use these statements for the truth of the matter asserted, they
    violate the hearsay rule and are inadmissible.  Fed. R. Evid. 802.
28

United States District Court
Northern District of California

Defendant argues that Plaintiff's version of events suffers from a critical logical error. ECF No. 89 at 12.  Defendant reasons that:

> [h]ad Pitschner and Anderson not been laid off when they were, two other employees would have been laid off at that time . . . Thus, the individuals who did remain on the job instead of Anderson and Pitschner (and later quit or got injured), would not have remained on the job in the first place (to quit or get injured). Therefore, if Anderson and Pitschner were on the job instead of those two other employees, they could . . . have been laid off.

Def. Opp. to Su MSJ at 12.  Defendant's point is well taken.  Plaintiff has the burden of showing that no set of facts can be proven which would allow a reasonable jury to find that termination before November 24, 2010 was possible.  The Court cannot conclude that Plaintiff has established, as a matter of law, that November 24, 2010 represents the earliest possible date Complainants could have been laid off had they not been laid off in March.

## IV.    CONCLUSION

Defendants' Motion is GRANTED IN PART and DENIED IN PART.  Defendant is entitled to judgment in its favor insofar as Plaintiff argues that the Complainants were fired for making safety complaints to personnel of Turner Construction.  Defendant is also entitled to judgment against Plaintiff's claims for damages in the amount of fringe benefits that Complainants would not have actually received, and did not replace or otherwise pay out of pocket.  The motion is denied insofar as it applies to safety complaints Complainants made to Siemens personnel.

Plaintiff's Motion is DENIED.

**IT IS SO ORDERED.**

Dated: May 12, 2014

_____
JON S. TIGAR
United States District Judge