GREGORY G. ISKANDER, Bar No. 200215
JOHANNA R. CARNEY, Bar No. 277946
LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard, Suite 600
Walnut Creek, California  94597
Telephone:   925.932.2468
Facsimile:    925.946.9809
giskander@littler.com
jcarney@littler.com

Attorneys for Defendant
SIEMENS INDUSTRY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIE SU, a California State Labor Commissioner, Division of Labor Standards Enforcement, Department of Industrial Relations, State of California, on behalf of the People of the State of California, | Case No.  3:12-CV-03743-JST **DEFENDANT SIEMENS INDUSTRY, INC.'S TRIAL BRIEF** |
| Plaintiff, | Trial Date:  August 17, 2015 Trial Time: 8:30 a.m. |
| v. | Courtroom: 9, 19th Floor |
| SIEMENS INDUSTRY, INC., a Foreign Corporation; and DOES 1 to 10, Inclusive, | Judge: Hon. Jon S. Tigar |
| Defendant. | |

I.     **INTRODUCTION**

Plaintiff Julie Su, the California State Labor Commissioner, alleges a single cause of action for violation of California Labor Code Section 6310 against Defendant Siemens Industry, Inc. on behalf of Complainants Charles Anderson and Charles Pitschner.  Complaint (ECF No. 1, Ex. A).

During the relevant time period, Siemens was operating as a subcontractor for general contractor Turner Construction on a project to install a Baggage Handling System at San Francisco International Airport.  Under the contract, Siemens, a non-union employer, was required to use union millwrights from Carpenters' Union Local 102 for the project.  Anderson and his son, Pitschner,

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:12-CV-03743-JST)

DEFENDANT SIEMENS INDUSTRY, INC.'S
TRIAL BRIEF

1    were both Local 102 members hired through the Local 102 hiring hall specifically to work on

2    Siemens' SFO project.  Anderson, a foreman, and Pitschner, a journeyman millwright, worked on

3    the SFO Project for approximately 6 months.  During the course of the project, millwrights were

4    hired and laid-off as necessitated by changing business conditions.  On March 12, 2010, Anderson,

5    Pitschner and two other millwrights were laid-off in a routine reduction in force.  Layoffs continued

6    in 2010, and the last remaining millwrights were laid-off on April 15, 2011, when the project

7    concluded.

8              Plaintiff alleges Anderson and Pitschner were chosen for layoff in retaliation for

9    making safety complaints to Siemens and Turner.  The Court has already ruled on summary

10   judgment that the complaints to Turner are not protected conduct and cannot form the basis of the

11   claim.  The evidence at trial will show that Anderson and Pitschner were not selected for layoffs

12   because they made safety complaints to Siemens' management, but were laid-off because of the

13   need to reduce the amount of workers on the jobsite and because they were among the four lowest

14   performers.

15   **II.    RELEVANT PROCEDURAL BACKGROUND**

16             The legal issues in this case are framed by the following: the order on the parties'

17   cross-motions for summary judgment (ECF No. 102), the order regarding associational retaliation

18   and fringe benefits (ECF No. 153), two orders granting leave to bring an interlocutory appeal (ECF

19   No. 143, 162), a declination by the Ninth Circuit to hear Plaintiff's interlocutory appeal (ECF No.

20   166), and the order denying Plaintiff's motion to amend the operative complaint (ECF No. 179).

21   Pursuant to these rulings:

22        1.   Defendant is entitled to judgment in its favor as a matter of law as to all claims in this

23             action relating to complaints made to Turner Construction.  ECF No. 102, 13:8-9, 28:15-

24             17.

25        2.   Section 6310 does not permit either Complainant to recover on the theory that Siemens

26             retaliated against one Complainant because of the other Complainant's protected activity.

27             ECF No. 153, 5:14-16.

28

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:12-CV-03743-JST)                    2.          DEFENDANT SIEMENS INDUSTRY, INC.'S
                                                            TRIAL BRIEF

3.   Plaintiff must show that each of the Complainants made protected safety complaints to Siemens.[1]

4.   Plaintiff must show that retaliatory animus was a but-for cause of Siemens' adverse action. ECF No. 102, fn. 7.

5.   Plaintiff may not recover as damages any health and life insurance benefits for which the Complainants did not bear out-of-pocket expenses. ECF No. 162, 2:18-22.   However, Plaintiff may seek fringe benefits other than health and life insurance benefits, such as pension benefits, paid vacation days, holidays and sick leave, and such amounts may be calculated based on the amount the employer paid monthly under the pertinent collective bargaining agreements for each employee that are "earned and banked up" with each hour an employee works.  ECF No. 153, 5-8.

## III.   LEGAL FRAMEWORK

California Labor Code Section 6310 prohibits an employer from terminating or otherwise discriminating against an employee because the employee has made "any oral or written complaint to . . . his or her employer" about "employee safety or health," "unsafe working conditions, or work practices." Cal. Lab. Code § 6310.   Section 6306 defines "safe," "safety," and "health" as "such freedom from danger to the life, safety, or health of employees as the nature of the employment reasonably permits."  Cal. Lab. Code § 6306.

As this Court previously noted, "Section 6310 does not apply to *any* employer, it protects only complaints made to '*his or her* [i.e., the complainants'] employer.'"  ECF No. 102, 12:14-15.   Consequently, in order to succeed, Plaintiff must prove by a preponderance of the evidence that Anderson and Pitschner each made complaints regarding safety to members of Siemens' management, that they reasonably and in good faith believed those working conditions to be unsafe, that Siemens made the determination to lay off Anderson and Pitschner because of those bona fide safety complaints, that the bona fide safety complaints were the but-for cause of Anderson and Pitschner's layoffs, and that the layoffs caused them both harm.

---

[1] The Court denied Plaintiff's motion to amend the complaint to add that Anderson and Pitschner were also terminated in retaliation for making protected safety complaints to their union. ECF No. 179.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

## IV.    FACTUAL BACKGROUND

In light of the Court's prior rulings, the key remaining questions for the jury are as follows:

1. Did Anderson and Pitschner each make protected safety complaints to Siemens? I.e., did Anderson and Pitschner make a complaint of "danger to the life, safety, or health of employees" to an individual with management authority at Siemens?

2. But for the safety complaints to Siemens, would Anderson and Pitschner have been laid-off on March 12, 2010?

3. If Anderson and Pitschner were selected for layoff in retaliation for protected safety complaints, until what date may Anderson and Pitschner recover back wages, pension benefits, paid vacation days, and holidays, if any?

4. If Anderson and Pitschner are entitled to recover back wages, the amount, and rate of interest, if any?[2]

### A.    Facts Central To The Anderson and Pitschner Lay-Off

Management of the SFO project was the responsibility of Installation Manager Kelly Scott, who was based in Dallas, Texas. Pat Grattan worked as the on-site installation manager. Skip Padover worked on-site as the Project Manager, handling the finances and change orders and acting as the liaison between Siemens and Turner. Siemens employed both millwrights and electricians on the project. Ken Nunn was the electrical superintendent and supervised the electrical work. David Slotta was the mechanical superintendent and supervised the millwrights. The allegations of wrongful conduct in this case (retaliation) are directed solely at Slotta.

The needs of the SFO installation project varied from week to week, and even day to day. It was not uncommon to hire people when there was a push to complete an area only to have to lay them off after the push. There were several rounds of layoffs during the course of the installation project. For example, all of the workers initially hired on the project in July 2009, including

---

[2] The Parties submitted briefing on the appropriate prejudgment interest rate in this case. ECF No. 188-189. The Court has not issued a ruling. Siemens contends that the issue of whether to award prejudgment interest should be decided by the jury, and the rate of prejudgment interest cannot exceed the constitutional rate of seven percent. ECF No. 189, 1:20-2:20.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:12-CV-03743-JST)                4.                DEFENDANT SIEMENS INDUSTRY, INC.'S TRIAL BRIEF

1  Anderson, were laid-off due to lack of work in August only to be re-hired in September 2009. At the

2  peak of the project, Siemens employed 25 millwrights on the project.  By October 2010, only 14

3  millwrights remained, and by the end of January 2011, only 7 millwrights remained.  From January

4  2011 until the project ended in April 2011, Siemens employed between 6 and 7 millwrights on the

5  project.  During the project, the installation manager (Kelley Scott) would determine the need for

6  layoffs and then rely on input from Slotta, Padover, and Grattan, in selecting the lowest performing

7  millwrights.

8           In March 2010, Siemens laid-off four millwrights due to a portion of the project being

9  completed and lack of space. Again, the ultimate decision to make layoffs was made by Scott, and

10  the individuals who were selected for layoff was based on review of performance and production by

11  those on site.  Two of the individuals laid-off at this time were Anderson and Pitschner.

12          Plaintiff contends that Slotta decided to lay off Anderson and Pitschner in retaliation

13  for alleged complaints Anderson made regarding forklift certifications, and two alleged near misses

14  that occurred involving forklifts.  Plaintiff contends Slotta gave the millwrights forklift certifications

15  (which allowed them to operate the forklifts) without providing the necessary training.  Anderson

16  and Pitschner both testified that they repeatedly complained to Slotta about numerous safety issues

17  throughout the course of their employment, including the lack of forklift training.  However, they

18  also allege that Slotta did not retaliate against them until Anderson went to Turner on February 11,

19  2010 to inquire about the alleged two near misses that occurred that week.

20          Trial will focus on one week in February 2010.  On February 9, 2010 Anderson was

21  written up for failing to follow instructions, which resulted in expensive re-work.  Anderson became

22  upset and refused to sign the disciplinary action.  Anderson alleges that around the same time, he

23  was informed of two near misses by other millwrights driving forklifts, and he began investigating

24  them.  Anderson alleges he went to members of Turner's management on February 11, 2010 to

25  inquire about the alleged two near misses that occurred that week.  Anderson also claims that

26  following his inquiry of Turner, he heard rumors that Slotta was planning to fire him.

27          On February 16, 2010, in an effort to minimize rumors about impending layoffs that

28  were lowering worker morale, Slotta held a meeting with all the millwrights, which has been

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:12-CV-03743-JST)          5.          DEFENDANT SIEMENS INDUSTRY, INC.'S
                                                  TRIAL BRIEF

1   referred to as the "New Day" meeting.  During the meeting, he told the millwrights that Turner "was

2   tired of all the drama" being caused by Siemens.   The "drama" referred to bickering among

3   Siemens' employees, going directly to Turner with issues without following the proper chain of

4   command, and issues with not getting work done properly.  After hashing out a lot of the issues that

5   had been causing the drama on the site, Slotta ended the meeting by stating that everyone was

6   starting with a clean slate moving forward, which included providing forklift training to all

7   employees and re-certifying all employees to operate the forklifts, whether they needed it or not.

8          There were no other issues following the February 16, 2010 meeting.  On March 12,

9   2010, Anderson, Pitschner and two other millwrights were laid-off as part of a reduction in force.

10   As noted above, other layoffs took place over the course of 2010.  By April 2011, the project was

11   completed and the few remaining millwrights were let go.

12          **B.     Plaintiff's Witnesses**

13          Plaintiff will rely primarily on the testimony of Anderson, Pitschner, and three

14   millwrights who worked with them (all of whom are friends of Anderson): Terry Bernard, Ernie

15   Gomes, and George Davis.

16          As the Court noted in its summary judgment ruling, both Anderson and Pitschner

17   made some key admissions during their depositions.  While Anderson testified at his deposition that

18   he made numerous complaints to Slotta, he also testified that he does not believe he was terminated

19   for any of these complaints, and in fact, making these complaints was part of his job. Specifically,

20   Anderson has maintained that only the "near misses and the circumstances surrounding them"

21   played a role in his termination.  He also testified that he complained to Slotta regarding his failure

22   to provide forklift training "month after month," yet, his relationship with Slotta did not change until

23   he reported the near misses to Turner.  Likewise, while Pitschner testified at his deposition that he

24   made numerous safety complaints to Slotta, he also testified that his relationship with Slotta was

25   good until his father complained to Turner.

26          As for the other three millwrights, a vast majority of what these individuals will

27   attempt to testify to is not in their personal knowledge, but rather things that Anderson told them

28   (and thus inadmissible hearsay).  In fact, for the little testimony offered by both Bernard and Gomes

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:12-CV-03743-JST)                        6.            DEFENDANT SIEMENS INDUSTRY, INC.'S
                                                                  TRIAL BRIEF

relating to observations in their personal knowledge, most all of it relates to Anderson's complaint to Turner (which is irrelevant) or events which took place after the complaint to Turner.  Likewise, Davis has little personal knowledge, and his testimony has little purpose other than to establish that Pitschner, who was on his crew, was a good worker in his personal opinion.

Siemens anticipates Plaintiff may also try to rely on the testimony of its investigator, Cathy Daly, regarding what Slotta told her during her investigation.  To this extent, in order to avoid hearsay, Plaintiff will have to establish that Slotta was authorized by Siemens to make a statement concerning the subject at issue or that he was an employee of Siemens acting in the scope of his employment and speaking concerning a matter within the scope of his employment at the time he spoke with Daly. *United States v. Chang*, 207 F.3d 1169, 1176 (9th Cir. 2000) (proponent of the evidence has the burden to demonstrate its admissibility); *United States v. Bonds*, 608 F.3d 495, 503 (9th Cir. 2010) (though athletic trainer was hired to act as a trainer, he was not authorized to speak on the subject of the origin of blood and urine samples allegedly belonging to his athlete client); *Breneman v. Kennecott Corp.,* 799 F.2d 470, 473 (9th Cir. 1986) ("Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's [agency or] employment").  However, Slotta was not the superintendent for the SFO project at the time Daly spoke with him, nor can Plaintiff establish that he had sufficient management authority for Siemens or authorization to speak on its behalf.

### C. Siemens' Witnesses

Siemens anticipates that testimony from members of management, including Pat Grattan, Skip Padover, and Kelley Scott, will establish that Anderson and Pitschner were indeed poor workers, that layoffs were indeed necessary, and that there was no retaliation in the selection of Anderson and Pitschner in the layoffs.  Ken Nunn, who was the electrical superintendent, also observed Anderson and Pitschner and will testify regarding his observations.  Janet Smith, Siemens' HR representative, will testify regarding the layoffs and discussions she had with millwrights on the job.  Finally, Lee Katchen was the manager for the maintenance of the baggage handling system after the installation, and will testify regarding his hiring and management of that portion of the project.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:12-CV-03743-JST)       7.       DEFENDANT SIEMENS INDUSTRY, INC.'S TRIAL BRIEF

1  **V.      DAMAGES**

2          In the event the jury decides in Plaintiff's favor, the court may award Anderson and

3  Pitschner appropriate relief in the form of reinstatement, reimbursement of lost wages and interest

4  thereon, and other compensation or equitable relief as is appropriate under the circumstances.  Cal.

5  Lab. Code § 98.7(d)(1).  Reinstatement is impossible here because the project at SFO completed in

6  April 2011.

7          The scope of any back-pay will be at issue because Siemens contends that even had

8  Anderson and Pitschner not been laid-off in March 2010, they could have been, and likely would

9  have been, laid-off during subsequent layoffs that occurred through 2010 and 2011.  The parties also

10 dispute whether Anderson and Pitschner would have been hired by Siemens to work on maintaining

11 the baggage handling system at SFO, which was part of a separate division of Siemens.

12         In addition, the parties dispute the appropriate amount of prejudgment interest that

13 may be awarded.  At the Court's request, the Parties submitted briefing on this subject on July 31,

14 2015.  ECF No. 188-189.  Siemens contends that the issue of whether to award prejudgment interest

15 should be decided by the jury, and the rate of prejudgment interest should be capped at the

16 constitutional rate of seven percent.  ECF No. 189, 1:20-2:20.  Furthermore, the interest should be

17 calculated as simple interest, rather than compound.  ECF No. 189, 4:13-23.

18         Plaintiff will bear the burden of proving that Anderson and Pitschner would have

19 remained employed on the SFO Project until its conclusion on April 15, 2011, the appropriate rate if

20 interest on back-wages, whether they would have earned any annuity/pension/vacation benefits

21 during that time, whether they incurred any losses for medical or pension, and whether both

22 Anderson and Pitschner would have been re-hired at their previous rates of pay to work on the

23 maintenance part of the SFO project.[3]

24 **VI.     CONCLUSION**

25         Siemens believes that the jury will see this case for what it is – a story of two poor

26 performers who could not accept the fact that management viewed them as poor performers and who

27 _____

28 [3] Plaintiff has limited the claim for wages on the maintenance project to one year. Joint Pretrial Statement, ECF No. 104, 3:10, 3:21.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:12-CV-03743-JST)                    8.        DEFENDANT SIEMENS INDUSTRY, INC.'S
                                                          TRIAL BRIEF

1  attempted to shield themselves by making alleged safety complaints.  The evidence will show that no

2  one at Siemens, including Slotta, selected Anderson and Pitschner because they made protected

3  safety complaints to Siemens.

4   Dated: August 10, 2015

5

6                                                    /s/ Johanna R. Carney
                                                    Gregory G. Iskander
7                                                    Johanna R. Carney
                                                    LITTLER MENDELSON, P.C.
8                                                    Attorneys for Defendant
                                                    SIEMENS INDUSTRY, INC.

9

10

   Firmwide:135249995.1 070784.1005

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

(CASE NO. 3:12-CV-03743-JST)            9.       DEFENDANT SIEMENS INDUSTRY, INC.'S
                                                 TRIAL BRIEF